arguments not to exceed 15 minutes per side. Ms. Jacobs for the appellant. Good morning. I represent the petitioner Ivan Bechtol. We've raised two issues in his brief and I'd like to start with the first. That is whether there was government action that substantially interfered with the witnesses' exercise of his decision to testify in this case. When you're talking about it, if you could address the procedural default argument as well, that would be helpful. Okay, then I think that I should start with that. The appellee, I'm sorry, the respondent, the respondent claims that this is not preserved and cites two Michigan State court rules. The exhaustion doctrine is not a preservation doctrine. The exhaustion doctrine comes from the federal statute. It requires that there be a fair opportunity for the state court to rule on it. I think that I misstated this in my reply. I didn't use the word opportunity, but it is the opportunity that's important here. This issue was presented to the Michigan Court of Appeals and to the Michigan Supreme Court. As the district court judge noted, although Hiddle's name is not mentioned in the petitioner's heading, there's extensive discussion of his facts and a discussion, of course, of the legal conclusions, although they weren't applied to Hiddle. How is that a fair presentation? I must say, that's the part that concerns me, is right in there. It doesn't look like a fair presentation when you're talking about coercing someone else. I understand it, except it's all woven. The facts are all woven through, starting with Mr. Hiddle. Coercing one person isn't saying that you coerced one person isn't the same as you coerced another person. I mean, maybe you mentioned that the other happened, but if your argument is you coerced this person, how is that asking the court to reverse because you coerced another person? That's my question. Well, I agree that it doesn't show that it wasn't the central focus, but I think that this is all part of this interference with both witnesses, that you can't just look at what happened to Mr. Lee without looking at what happened to Mr. Hiddle, but they're also separate. Are you saying that because it's part of the coercion story of Lee, is all these other people? Part of the coercion story of Hiddle, too. Lee is part of Hiddle, and Hiddle is part of Lee. Would there have been five people in the presentation? Would they all have preserved it? No, no. And it doesn't... Coercion is so uniquely about one person. And I agree, and the fact that the name wasn't stated in the headnote, I don't think should dissuade this court from finding that the state court had the opportunity to rule on it. This isn't the kind of situation, for instance, where you're looking for a needle in a haystack and you can't find the particular issue, or the headnote itself is vague. There was a denial of due process. In this, the courts are alerted to the fact that the witnesses, and I think they talked, I think that the headnote says denial of... I think the headnote uses plural witnesses. Their decision whether to testify was substantially interfered with. The heading just says Lee. It says Lee, but it uses the plural witnesses. Oh, I see, confront witnesses. So I think that shows that, and this brief was obviously talking about both witnesses. However, even if you find that that was not raised, then I would suggest to the court that it's ineffective assistance of appellate counsel. By parsing this heading, witnesses is part of what the constitutional right is, but the way it was denied it was not being able to present a defense by the threat to prosecute Lee, and the subsequent ruling that Lee was entitled. I can see how you could say part of the subsequent argument related to Hitler, but the heading is clearly limited to Lee, isn't it? Well, I'm going with that plural judge. But plural is part of the constitutional right. I mean, you could say denied his constitutional rights wouldn't mean that he could do any right in the Constitution. No, I know, and that would be vague. And if I was going to write the headnote only about Lee, I would say the right to confront the witness against him. I would phrase it that way. I wouldn't have used a plural. So I'm suggesting that the plural is what saves this for your review. You could say that the appellate attorney was ineffective for not composing a better headnote. But there is no remedy back in state court to raise that. So under 2254, without a remedy, this court can reach the issue anyways. I'm not sure I followed that last part. Under the exhaustion doctrine, if there is not also a state court remedy remaining for the petitioner, then this court can reach it. There is no remedy left for my client to go back and raise ineffective assistance of appellate counsel. Unless that procedural default, there's cause and prejudice and ineffective assistance of whoever didn't raise it. Are you arguing that or not? I am arguing that. When you read what happened in the colloquy between the judge and the two witnesses, Charles Lee gets up and he says, I don't want to testify. There's nothing that the trial court said that changed his original thing. I don't want to testify. So when Mr. Hiddle gets up, his first statement is, I want to testify. And then it's only after he talks to an attorney and then comes back in front of the judge and says, I want to testify. And then the judge says, you know, you could be charged with conspiracy to commit murder. That at that point he says, let me talk to the attorney again. And then he comes back and says, I want to exercise my Fifth Amendment right. You've got nothing with Lee. It's Hiddle that his decision was substantially interfered with. And in terms of the effect of what Hiddle's testimony is, Lee's testimony is merely cumulative, I believe, to Scott Riplow. Which attorney at which stage is being ineffective in the argument that you're making right now? The appellate attorney. The state appellate attorney. On direct appeal? Direct appeal.  I don't make that. Let me see if I wrote it. Let me just see if I raised it in my reply brief. Well, I think it's because I was able to go back and look at 2254 and see that the exhaustion requirement can be avoided if you can raise an effective assistance of appellate counsel. Yes, you're right about that in the abstract. But you didn't raise that argument. Then it is my error. But my client should not suffer if I'm raising it now. Okay. So again, returning to. I said okay, but I didn't want to cut off your reply. Maybe I should go to the second issue, which is the sufficiency of the evidence issue. In this case, my client was convicted of conspiracy. He was convicted of several things. But the major sufficiency argument has to do with conspiracy to commit murder in the first degree. That crime requires two intents. One is the intent to combine with others. But it also requires that intent to commit the object of the conspiracy, which was first degree murder requiring the specific intent and deliberation of premeditation. There is no evidence to show that my client joined with Mr. Cron in any conspiracy in which he knew that the objective of the conspiracy was going to be first degree murder. The prosecution has cited a case called, I believe it's Coleman v. Johnson, in which the court did find sufficiency. It's so clear that the evidence in this case was extraordinarily sparse when you look at what happened in Coleman. In that case, the defendant is present in the afternoon when the co-defendant beats the guy up and threatens him. He's present later in the afternoon and hears the co-defendant again threaten him. They are then seen walking into an alley with the co-defendant first, the soon to be dead person second, and the defendant third. From those facts you could infer that the defendant knew what was going to happen when they walked into the alley. In this particular case, there's nothing to show that my client knew that Cron wanted to kill the woman. He either wanted to get... I agree that Danny Lee Davis testified allegedly to statements made by my client. The major point that he talked about, claiming that my client said they were going to overdose her, that was completely attacked by the medical examiner's report that showed that there was no drugs in her system other than metabolized cocaine which occurred the day before when she stole Mr. Cron's cocaine. So I would suggest that... I agree that Mr. Davis presents problems, but when you look at the fact that the crime was alleged to have occurred on Labor Day that one day and my client then goes to prison for 12 hours and Mr. Cron carries on using his brother to come and get him and take him places and then after he's through drowning the woman he calls the brother and the brother has to come pick him up. All of this was done without my client's knowledge or any participation in it. Danny Lee Davis is a jailhouse snitch and for my client to spend the rest of his life in jail because of what a snitch was offered and now he's recanted. I mean this seems to be a malfunction of the kind that Richter was talking about where this substantial, this complete denial of freedom for the rest of your life hinges upon the credibility of someone who has no credibility. Coleman talks about the fact that the evidence is sparse. I would suggest to you that Danny Lee Davis doesn't even rise to the level of sparse. I mean we may agree with you but we don't get to overturn the jury. You came to a different conclusion, do we? You get to overturn the jury if rational fact finders could not find enough evidence in the record. That's what you get to do. That depends on how believable this jailhouse snitch is, right? Yes, it does. So we would have to second guess how believable that guy is not having seen him testify. Isn't that sort of strange? I don't think so. I think that all the sufficiency cases look at that. And besides identification of false confessions, most of the bad convictions rest upon jailhouse snitches. After deferring to Jackson v. Virginia you also have to decide whether it was objectively unreasonable under 2254 and I would suggest that this decision of the state appellate courts affirming the sufficiency evidence was in fact unreasonable and I'd ask you to overturn the convictions. Can I ask another question about procedural default because I'm still trying to get this straight? You're saying now, although it looks like you may not have raised it, is that appellate counsel on direct appeal may have been ineffective. Is that right? Yes. Wouldn't that have to then be raised on collateral attack in the state courts? Yes, it would except collateral. So that was not raised on collateral attack. That very ineffective assistance of appellate counsel was not raised on collateral. That's correct. So are you arguing that that person was ineffective as well? My client was improper. I can't argue that he was ineffective. He was just stupid. And again, there is no collateral attack left for my client because of the Michigan court rule 6.500. You mean he did the collateral attack pro se? Yes, pro se. And there isn't one for him to go back to because under Michigan court rule 6.500 you only get one collateral attack. I see. Thank you. Good morning, may it please the court. Bruce Edwards, Michigan Assistant Attorney General for the Warden. Judge Rogers, I agree 100% that this claim is procedurally defaulted. The district magistrate judge... Well, the district court ignored the fact that the Michigan court rule and Michigan case law both say in order to preserve and raise an issue, to exhaust an issue, you have to present it in the statement of questions presented. And that did not occur here. In fact, as I was preparing for argument, I came across the fact that Federal Rule of Appellate Procedure 28A5 has the exact same requirement. I did a quick search of that court rule slash paragraph on the word waiver and there are at least three Sixth Circuit cases that hold the very same thing that the Michigan Court of Appeals holds. And that is if you file a direct appeal in the Sixth Circuit and you don't include an issue in your statement of questions, it's waived. What about the argument that it was ineffective assistance of appellate counsel? That is an excuse for a procedural default except there was a subsequent motion for relief from judgment filed by the petitioner himself where it could have been raised. He did not raise it. There's no attorney for him to blame. It's only himself that is to blame for that. That's the motion for relief from judgment? That's correct, Your Honor. I'm trying to think about the possible relevance of Martinez and Trevino and so forth. Am I confused? I don't see any relevance to those. If you say that he didn't raise it, if he'd had poor counsel that didn't raise it, then he'd have an argument under Martinez, right? Well, there's been no holding that those cases even apply in Michigan because you can bring an ineffective assistance claim on direct appeal in Michigan and that happens all the time. That's what I'm trying to get at. So your answer to any conceivable Martinez argument is that Martinez just flatly not applicable? It would not apply. That's correct, Your Honor. But there's been no Sixth Circuit case to that effect yet. What have the cases said generally about Trevino and Michigan? I don't know that there are any that have said anything about one way or the other. I'm sorry? I don't know that they've said anything one way or the other, but I know they haven't said that they apply. The Michigan Court of Appeals is entitled to enforce a court rule that's identical to the federal rule of appellate procedure that the Sixth Circuit enforces. And that's why the Court of Appeals didn't discuss the issue at all. It's not in their opinion, whereas there's a lengthy discussion regarding Charles Lee, the other witness, whose name was specifically included in the statement of questions presented. Now, the District Court found relief was not available on this witness intimidation claim, even on de novo review. And I believe that that certainly was a correct decision. It is true that Webb v. Texas found a particular case that a judge went way over the top with a witness and intimidated that witness into asserting his Fifth Amendment. But Webb is easily distinguishable here because, in this case, the judge appointed an attorney for the witness. That didn't happen in Webb. And the judge in Webb specifically said, I'm going to personally see that the grand jury hears about your testimony if I think you've committed perjury. And he went on and over and gratuitously, the Supreme Court talked about unusually strong language and that this was the sole witness of the defendant. In this case, the defendant had three other witnesses other than Mr. Hiddle. And the judge also found out that Mr. Hiddle was only 19 years old and only had a 10th grade education. And the consequences of if Hiddle had testified would have been great because it was the possibility of a conspiracy to commit murder. And there was a lot of evidence of phone calls that were being made to Mr. Hiddle, possibility of Hiddle providing drugs, a lot of things going on. And the final decision by Mr. Hiddle was made after a second consultation with his attorney that lasted at least 20 minutes. And the judge found that Mr. Hiddle made his own decision. So I think that this court can find that this first issue is either procedurally defaulted or that the district court properly analyzed the issue and that the judge did not engage in improper warnings. As for the prosecutor's comments, there is no U.S. Supreme Court case finding a due process violation on the basis of prosecutor warnings. There is Sixth Circuit case law, but in habeas, the Sixth Circuit cases aren't controlling. It's only U.S. Supreme Court cases. And just two weeks ago, in White v. Woodall, the U.S. Supreme Court said federal appellate courts should not extend rulings from one case to a new scenario. And if you were to extend Webb, which is a judge warning case, to a prosecutor warning case, I think that would be inconsistent with White v. Woodall. And finally, the prosecutor did not, in fact, say anything to Mr. Hiddle. His comments were made when Mr. Hiddle was out of the courtroom. And he appropriately scared Mr. Hiddle into not testifying. What happened is he talked to a lawyer two times, and finally, after the second conversation, he realized, you know, I could really end up in trouble here. And he decided he made his own decision not to testify. So there's no violation with reference to Mr. Hiddle. Now, for the sufficiency of the evidence, obviously, under AEDPA and Jackson, there's double deference that's supposed to apply. And in my brief, I cited at the time the relatively recent case of Johnson v. Coleman, the case opposing counsel just discussed. And when I write these briefs, if I find a case that I think is particularly helpful to me, I think to myself, I wonder what opposing counsel is going to say about that when they file their reply brief. Well, I was quite surprised by what opposing counsel had to say about Coleman. In her reply brief, she said, if the United States Supreme Court was going to adopt a new standard after 34 years of the Jackson standard, it would not do so in a per curiam opinion. This double deference cannot result in a bare rationality test. Well, I'm sorry, but if you read Coleman v. Johnson, it specifically says, quote, the only question under Jackson is whether the jury's decision is insupportable as to fall below the threshold of bare rationality. And yes, it was per curiam, but it was a 9-0 opinion. So it's an elaboration on the Jackson standard. It's not a new standard. And counsel did not argue that this verdict is not supported by the bare rationality test. And the reason she couldn't make that argument is because of the testimony of Danny Davis. As you mentioned, Judge Sutton and Judge Rogers, credibility is an issue for the jury. The United States Supreme Court has said that it's up to the jury and not appellate courts to decide whether or not a witness told the truth or, quote, fabricated a cock and bull story. And that's from U.S. v. Bailey, 444 U.S., at page 414. So not only do we have the testimony of Danny Davis, who specifically says, Mr. Bechtel told me that he went with William Krohn to the trailer where the victim was and they were going to attempt to kidnap her at that time. When that failed, then they made a subsequent plan. They were going to grab the victim on her way home from work. Bechtel and a friend were going to wait at one spot and Krohn and a friend were going to wait at another spot. And the plan was to take her to a lake, overdose her and make it look like she drowned and drove her car into the river. And sure enough, the victim was found drowned or in the water, dead, and her car was partly in the water. So the testimony of Danny Davis was supported by what actually happened here. In the motion for relief from judgment, the state court judge specifically said there's reasons to believe that Danny Davis told the truth. And he set forth three or four reasons why he thought Danny Davis did tell the truth. But in addition, he also had the testimony of Scott Riplow, who was called by the defendant. And he confirmed that Bechtel was aware that Krohn intended to kill the victim before they went to the trailer and the botched kidnapping attempt failed through. And then sure enough, a day later they made a subsequent plan. And the subsequent plan did occur. Now there's been an argument that maybe the crime occurred when he was in jail. Well, Michigan law says the crime of conspiracy is completed the moment the agreement is entered into. And you don't even need an overt act. And that's why Coleman v. Johnson factually is not applicable here. Under Pennsylvania law, Coleman v. Johnson was a Third Circuit case where they had granted habeas. And the United States Supreme Court unanimously reversed. And in Pennsylvania, you needed an overt act to support a conspiracy conviction. In Michigan, you do not. So it doesn't matter. Still, it's pretty clear that the jury would not have convicted if it hadn't been for the testimony of the jailhouse snitch. Is that correct? No, it isn't, Your Honor. It's hard to see what the basis for it would be. There was this event that happened, and then later on she's found dead. Well, it's clearly, if they believed his testimony, it's slam dunk. But I just wanted to point out on page 24... I guess maybe you could say there was conceivably enough, but it's kind of hard to imagine that they would actually convict on the basis of... What's the strongest evidence? Hang on for one moment. On page 24 of the sentencing transcript, the judge said, maybe the jury dismissed Danny Davis' testimony. They certainly could have returned the verdict without Danny Davis' testimony. So that was the trial judge who presided over the entire trial, and that was his view of the evidence. So what you have is an attempt to kidnap... And then the jury testified that Bechtel told him that Krohn told him, I'm going to kill this lady. And then knowing that Krohn plans on killing this former girlfriend, he goes with him to the trailer. Goes with who to the trailer? Bechtel went with Krohn. That's before Krohn bought the false mustache. Right, that's correct. Because they planned on getting her at the trailer. When that fell through, they made a subsequent plan to get her on her way coming home from work. And then Bechtel got arrested. Krohn and his brother went and bought the disguise elements and everything. You can certainly find enough evidence that Krohn did it. Where's the evidence that Bechtel did it? Well, first off, it's entering into the agreement. So before they attempted the kidnapping, they entered into an agreement to, we're going to get this girl, we're going to kill her, we're going to kidnap her and kill her because she might turn us in for our drug dealing. And so when he went with Krohn, Scott Riplow's testimony, Scott Riplow testified. About getting rid of them because they're a drug dealer? Where does that come from? Well, I know that's Danny Davis for certain. I can't remember if Scott Riplow included that part. I remember, but my mind's not 100% as to which witness said which part. So where's the evidence that they conspired to kill her because she was going to turn in drug testimony? That all comes from Danny Davis. Well, the motive, yes. Is there any of that in the remaining evidence? Well, there's the inferences from all the phone calls. The people were working together and clearly had a plan. The attempted kidnapping that fell through, they went to a campground looking for her and then finally somebody found her and then she ended up dead. Just like... I understand why you're fighting Judge Rogers on this point. There's an awful lot of cases in the federal reports that turn on the testimony of jailhouse snitches. No question, but he asked me, is there anything beyond the jailhouse snitch? I was trying to come up with an answer. The jury is entitled to make inferences from things that occurred and just actions that took place. I would not concede that there were insufficiencies without it, but we have it. So that's really not that controlling, of course. So we clearly have... Once Davis's testimony is considered, there's more than enough testimony, especially under the double deference. So clearly I would ask the court to affirm the district court's decision that the defendant was not entitled to habeas relief. Why are the courts suspicious of recantations? Just from my edification, why are they so suspicious? Well, I think what it is that you can... Obviously the defendant can threaten them, can pay them off. A lot of things can happen that we don't know about at the time, or frequently when they testify they want a deal and then they got the better deal necessarily. And were any of those things going on in this case? He was offered a better deal, yes. And the jury was told that. Judge Sutton, if you turn to page 3 of the reply brief at the very bottom, I talk about the fact that appellate counsel failed to preserve the issue. And I just want to point that out to you, but I want to address other issues. Because I think I conceded that I hadn't raised it, but I did write a paragraph about it. Page 3, the reply brief, starting, if this court finds there was a default in state court, then it should find that was caused by petitioner's former appellate counsel. Judge Rogers... Of course, that ineffectiveness has itself to be exhausted. Yes, and that was my point, that it hadn't been exhausted in state court. He can't go back because there's no collateral procedure for him. I want to talk about... You asked about where this evidence comes that she was going to tell about their drug use. That was a prosecution theory. And the prosecution presented it to Ira Henke, who was the victim's boyfriend. And Ira Henke testified that the prosecutor asked him about it, and Ira Henke said she would have never testified to that. So that was just a theory. But there is testimony from the jailhouse snitch to that effect. I don't know whether there is or isn't. I can't recall that. And if there was, it was then fed to him by the prosecutor. And again, this was a high publicity case where anybody that wanted to could read the paper and find out that she had been drowned. And that other factors too. I just don't believe that there is such a thing as this bare... And I did read it in Coleman, this bare threshold of rationality or whatever it is. But Coleman also talks about the sparseness of the evidence. And I think that that's the more reasonable way to look at what they're now talking about in terms of double deference. And Danny Davis' testimony doesn't make up for the sparseness of the evidence against my client. And that's how I would argue that. In terms of recantation, you asked a question that the Michigan Court of Appeals has talked about. It said it can't figure out who to believe, so it throws its hands up and goes with what came first in time. In this particular case, the prosecution offered... I'm just stating how the Court of Appeals said it. In this case, Danny Davis was offered a deal, we'll get rid of one count, we'll sentence you on the other count. When he found out that that wasn't a deal, that's when he recanted. So it's hard to tell whether he was lying in order to get the deal from the prosecution. Because facing two counts of criminal sexual conduct against your girlfriend's child was going to get him some pretty nifty time. All that was raised to the jury or presented to the jury? No, because he hadn't recanted at that time. He was sentenced, I believe, after he got the deal before. And Judge, I don't want to speculate about when he was sentenced, but that was not raised. The jury knew that he got a deal, but they didn't know that he was dissatisfied with the deal and that he testified to that because that was the deal he was going to get. I would just say in closing again, Danny Davis' testimony does not make up for the sparseness of this record. I'd ask the Court to reverse this and send it back to the lower court. Thank you.